NOT FOR PUBLICATION (Docket Nos. 16, 22, 23)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____ :
TRACY KRONICK and :
JEN KACZMARSKI, :
on behalf of themselves and :
those similarly situated :
 :
                Plaintiffs, : Civil No. 07-4514 (RBK)
     v. : **OPINION**
 :
bebe Stores, Inc., :
 :
                Defendant. :
_____ :

**KUGLER**, United States District Judge:

      This matter comes before the Court upon a motion by Defendant bebe Stores, Inc. ("Defendant") to dismiss Counts IV through XII of the Complaint filed by Plaintiffs Tracy Kronick and Jen Kaczmarski ("Plaintiffs"). Defendant's motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, or for summary judgment in the alternative, if the Court chooses to consider material outside the pleadings, pursuant to Federal Rule of Civil Procedure 56. Plaintiffs' Complaint makes claims pursuant to the Fair Labor Standards Act, the New Jersey Wage and Hour Law, the New Jersey Wage Payment Law, the New Jersey Conscientious Employee Protection Act, and New Jersey common law. For the reasons set forth below, this Court will grant in part and deny in part

Defendants' motion to dismiss.

**I.     BACKGROUND**

According to the Complaint, Plaintiff Kronick worked for Defendant as a store manager for approximately four months in 2007 at Defendant's retail store located in Cherry Hill, New Jersey.  Also according to the Complaint, Plaintiff Kaczmarski worked for Defendant as a store co-manager and acting store manager for approximately eight months in 2006 and 2007 at Defendant's retail stores at the Pier at Caesars, Atlantic City, New Jersey and in Cherry Hill, New Jersey.  Plaintiffs allege that various employees of Defendant trained Plaintiffs to shave time from employee time records to bring each employee's time down to 40 hours of compensable work per week, in most cases regardless of hours actually worked.  Plaintiffs allege that they too were required or permitted to work in excess of 40 hours per week but were not compensated for that overtime pursuant to Defendant's policy of shaving time.

Plaintiffs allege that they were required to work off the clock during meal breaks by signing out of the payroll system at the store, continuing to work during the break, then signing back into the payroll system as though they had taken an actual break.  Further, Plaintiffs allege that they were required to recruit new employees outside Plaintiffs' regular 40 hour work week but without pay.  Plaintiffs allege that they were required to clock out of the payroll system for store cleanups and corporate visits, thus not being paid for their time.

Plaintiffs allege that as a result of the manipulation of employee time records, Plaintiffs were deprived of pay due as well as accrued vacation time.

Plaintiff Kaczmarski alleges that she was not given a promised increase in compensation when she was promoted on or about March 26, 2007.  Further, Plaintiff Kaczmarski alleges that

she was not given a bonus she earned in May 2007 pursuant to Defendant's bonus plan.

Plaintiff Kronick alleges that she complained about time shaving to her superiors and representatives of Defendant in or about March, April, and May 2007, after which time Plaintiff Kronick alleges she was retaliated against by Defendant's district manager, who was among those to whom Plaintiff Kronick had complained.  After a number of alleged retaliatory acts by the district manager Plaintiff Kronick reported her concerns again.  Plaintiff Kronick alleges she was then further retaliated against, as her employment with Defendant was terminated.

Plaintiffs brought an action alleging violations of the Fair Labor Standards Act ("FLSA"), the New Jersey Wage and Hour Law ("NJWHL"), the New Jersey Wage Payment Law ("NJWPL"), the New Jersey Conscientious Employee Protection Act ("CEPA"), and New Jersey common law.

## II. DISCUSSION

### A. Standards

Defendants have moved for dismissal of Counts IV - XII of Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, if the Court considers materials outside the pleadings, for summary judgment under Rule 56.  Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint or portions of a complaint may be dismissed for failure to state a claim on which relief can be granted. When reviewing a Rule 12(b)(6) motion to dismiss, the court must accept as true all allegations in the complaint and must provide the plaintiff with the benefit of all inferences that may be fairly drawn from the contents of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993); Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp.

v. Twombly, 127 S. Ct. 1955, 1964 (2007) (citation omitted). The court may not grant a motion to dismiss unless it is certain that no set of facts can be proven that would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

It is well-settled that in considering a motion to dismiss, a court may consider the allegations of the complaint, matters of public record, and documents specifically referenced in or attached to the complaint. See Gil v. Related Mgmt Co.,No. 06-2174 (WHW), 2006 WL 2358574, *2 (D.N.J. Aug. 14, 2006) (citing Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003); Mele v. Federal Reserve Bank of N.Y., 359 F.3d 251, 255 n. 5 (3d Cir. 2004) ("A document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.") (internal citation omitted)).

**B.     Count IV**

Defendant moves to dismiss Count IV of the Complaint failure to state a claim. Defendant argues that Plaintiffs have purported to bring a private right of action under the New Jersey Wage Payment Law ("NJWPL") when such a private right of action is not available under the statute.[1] In response, Plaintiffs point to a New Jersey case in which an employee was allowed to proceed under an implied private right of action conferred by the NJWPL. Defendant, however, cites the enforcement provisions of the NJWPL, specifically providing that the

---

[1]To be sure, N.J.S.A. 34:11-4.7 confers a private right of action on an employee whose employer makes any agreement with the employee for the payment of wages "otherwise than as provided in this act." The Defendant in this case asks the Court to consider whether there is a private right of action for any other alleged violations of the statute.

Commissioner of Labor has enforcement authority over violations of the statute, in arguing that this Court should not read the statute to allow a private right of action. Further, Defendant notes that the New Jersey Superior Court, Appellate Division, has addressed the question of whether or not the NJWPL provides an implied private right of action to employees, however Defendant overstates the court's finding on this issue. In fact, the New Jersey Superior Court, Law and Appellate Divisions, and at least one Federal District Court, have addressed this issue of New Jersey law.

The only New Jersey trial court to address the issue found a private right of action implied in the statute. In Mulford v. Computer Leasing, Inc., the Superior Court, Law Division, concluded that the NJWPL allows a private, civil right of action by an employee against an employer in the case of an alleged violation of the statute.[2] 354 N.J. Super. 385, 393-94 (Law Div. 1999). The court reasoned that employees are the "special beneficiaries" of the statute, and are thus impliedly conferred a private right of action "to protect and enforce their rights thereunder, as a remedy in addition to the penal and administrative sanctions and administrative wage collection proceedings, provided by other sections thereof." Id. at 394.

The New Jersey Superior Court, Appellate Division, nor the New Jersey Supreme Court have squarely addressed the issue, but the Appellate Division has noted the Mulford decision in at least two instances. In Winslow v. Corporate Express, Inc., the Appellate Division acknowledged the Mulford decision stating, "We agree with the Law Division's conclusion in

---

[2]The Court in Mulford referred to N.J.S.A. 34:11-4.1 et seq. as the New Jersey Wage and Hour Law. Those provisions, however, are the codification of the New Jersey Wage Payment Act. This opinion will refer to N.J.S.A. 34:11-4.1 et seq. as the New Jersey Wage Payment Law ("NJWPL").

Mulford that an implied private right of action **could** be found in the Wage Payment Law even in the absence of express statutory authorization." 834 A.2d 1037, 1043 (App. Div. 2003) (emphasis added). In Shelter Sys. of N.J. v. Fair, the Appellate Division considered an appeal by an employee in a breach of contract case, where the trial court denied the employee an award of counsel fees and other allowances. 2006 WL 2192904 (App. Div. July 18, 2006). The employee in Shelter Sys. initially based his claim upon the NJWPL. After the employer moved for summary judgment, arguing that the statute does not allow for a private right of action, the employee moved to amend his complaint to "plead a more conventional theory of breach of contract." Shelter Sys. at *4. In its assessment of the breach of contract claim, the court acknowledged the Mulford decision but found that because the employee had eventually pursued a breach of contract claim, rather than a claim under the NJWPL, the court "need[ed] not resolve whether [the NJWPL] does or does not imply a private right of action. Id. Although Defendant avers here that the Appellate Division "rebuffed" the court's finding in Mulford, such a description is an overstatement of the Appellate Division's mere decision not to address an issue not before the court.

     Finally, in an Eastern District of Pennsylvania case, the court analyzed whether a private right of action is implied in the NJWPL. Sternadori v. SCS Healthcare Marketing, Inc., No. 05-3679, 2007 WL 710298, *5-*6 (E.D. Pa. March 6, 2007) ("The New Jersey Supreme Court has not explicitly found a private right of action under the New Jersey Wage Paymnet Law; but courts have adjudicated civil suits brought by employees against their employers and managing officers for wages not paid as defined in said law.")(citing Mulford). The court found that the employee in that case could pursue a private right of action under the NJWPL, although she

6

would be limited to collect wages due if she prevailed on her claim, as the NJWPL "does not provide for statutory or punitive damages to prevailing civil litigants." Id. at *6.

This Court provides the Plaintiffs in this case with the benefit of the inference that a private right of action is implied in the NJWPL. Further, the averment that a private right of action exists rises beyond mere speculation, as the New Jersey Superior Court, Law Division, and the Federal Eastern District of Pennsylvania have allowed cases to proceed on that basis. Although the New Jersey Appellate Division nor the New Jersey Supreme Court have yet to decide the issue, Defendant has not presented a case that suggests that there has ever been a finding that an implied private right of action has not been found in the NJWPL. Accordingly, the Defendant's motion to dismiss will be denied, as it has failed to meet its burden to show that Plaintiffs have failed to state a claim upon which relief may be granted.

### B. Counts V - VIII

Counts V, VI, VII, and VIII - Plaintiffs' New Jersey common law causes of action, generally based on Defendant's alleged failure to properly compensate Plaintiffs, are completely derived from Plaintiff's FLSA claim. Defendant argues that these counts are therefore preempted by the FLSA. The Court agrees.

The Third Circuit has not directly addressed the question whether the FLSA preempts state common law causes of action, but courts have held that claims brought under state common law and "directly covered" by the FLSA, including overtime claims, must be brought under the FLSA. See Moeck v. Gray Supply Corp., No. 03-1950 (WGB), 2006 WL 42368, *2 (D.N.J. Jan. 6, 2006) (citing Chen v. Street Beat Sportswear Inc., 364 F.Supp.2d 269 (E.D.N.Y. 2005). In assessing whether state common law claims are also "directly covered" by the FLSA, courts look

to the basis of the claims, in particular whether the "common law claims are based on the same facts and circumstances as [the] FLSA claims." Johnston v. Davis Sec., Inc., 217 F. Supp. 2d 1224, 1227 (D. Utah 2002). In Moeck, the court held that the plaintiffs' state common law claims were preempted by their FLSA claims because the state law claims "merely [were] based on" the plaintiffs' FLSA overtime claims. Moeck at *2. In that case, as here, employees were allegedly required to work overtime without compensation. Id. In this case, Plaintiffs' allegations in Counts V - VIII are based upon Defendant's alleged failure to compensate Plaintiffs for overtime. Plaintiffs claim that by requiring employees to miss meal and rest breaks, requiring overtime work without pay, and failing to accurately award vacation and other benefits by improperly recording time, Defendant violated state common law. However, all such claims are merely based upon the same facts and circumstances which also form the basis of Plaintiffs' FLSA claim. These claims are, therefore, preempted by the FLSA and will be accordingly dismissed.[3]

### C. Count IX

Defendant moves to dismiss Plaintiffs' claim in Count IX of the Complaint, alleging breach of contract for failure to pay a bonus to Plaintiff Kaczmarski, because Defendant avers that the claim is based upon an unenforceable contract between the parties. The Court agrees.

As Plaintiffs' Complaint alleges that Plaintiff Kaczmarski was a participant in Defendant's bonus plan, and given the authority described in II.A. supra, it is appropriate to rely on Defendant's provided copy of the applicable "Spring 2007 Bonus Plan Overview" in

---

[3]Because the Court has determined that the claims in Counts V - VIII are preempted by the FLSA, the Court finds it unnecessary to address Defendant's argument that Counts V and VI are predicated on unenforceable contracts.

considering this motion to dismiss. Employer policies articulated to employees are, under New Jersey law, treated like employee manuals in that both may be regarded as contracts between employer and employee. Shebar v. Sanyo Business Systems Corp., 526 A.2d 1144, 1148-49 (N.J. Super. Ct. App. Div. 1987). It is, however, well-settled in New Jersey that the terms of an employee manual are only sometimes enforceable as a contract. Woolley v. Hoffman-LaRoche, Inc., 99 N.J. 284 (1985). To avoid the enforcement of an employee manual as a contract, an employer may include in the manual, in a very prominent position:

> a statement that there is no promise of any kind by the employer contained in the manual; that regardless of what the manual says or provides, the employer promises nothing and remains free to change wages and all other working conditions without having to consult anyone and without anyone's agreement; and that the employer continues to have the absolute power to fire anyone with or without good cause.

Woolley, 99 N.J. at 307. Because an employer's policy statement, outside the context of the employee manual itself, may be treated as a contract in the same way as the employee manual, the Court will apply the reasoning of Woolley - allowing a disclaimer to overcome the implication of a contract - to an employer policy statement. Thus, employer policies require the same disclaimer described in Woolley if the policies are not to be treated as a contract between the employer and employee.

Defendant asserts that no contract exists upon which Plaintiffs may base their claim. Defendant's position is that the disclaimer at the end of the "2007 Bonus Plan Overview" effectively overcomes any implication that the bonus plan was a contract. The disclaimer states:

> bebe is an "at will" employer which means that the working relationship can be terminated by either employer or employee at any time, with ot [sic] without cause or advance notice.
>
> bebe's policies and procedures, either oral or written, are not contracts. Nor are these policies or procedures guarantees of employment for any length of time or for any

9

>particular term or condition.
>
>No bebe management representative except the CEO, may enter into any written or oral agreement that specifies employment for a specified period of time, for any particular term or condition that otherwise contradicts the at-will policy.
>
>If the CEO enters into an agreement with an employee, the agreement must be written and signed by both parties. All bebe policies and procedures can be changed at any time, with or without notice.

(Def. Br. Ex. F.) Based on this disclaimer language, Defendant maintains that Count IX of Plaintiff's Complaint must be dismissed as a matter of law. Assuming the "2007 Bonus Plan Overview" constitutes a policy statement under Shebar, a prominent disclaimer that comports with the Woolley requirements will overcome the implied contractual nature of the policy statement. The Court finds that the disclaimer is clear, comports with the Woolley requirements, and is prominently located on the signature page of the document. The disclaimer serves to overcome the implication that the policy statement is a contract, and Plaintiffs may not base a breach of contract claim on the bonus plan. Accordingly, Defendant's motion to dismiss Count IX of the Complaint will be granted.

  **D. Count X**

Defendant moves to dismiss Plaintiffs' claim in Count X of the Complaint, alleging that Plaintiffs' claim of retaliation under the Conscientious Employee Protection Act ("CEPA") is preempted by the FLSA. The Court disagrees and will deny the motion to dismiss.

Defendant's argument for dismissal of this claim is based upon the logic - employed by the Court here in II.B. - behind dismissing state common law causes of action arising under the same facts and circumstances as a FLSA action. Defendant in this case makes no specific showing that a FLSA claim preempts a CEPA claim aside from an argument that the two claims

are redundant. However, "the existence of a federal cause of action does not . . . foreclose the possibility of concurrent and complementary state law." Sandom v. Travelers Mortgage Svcs., Inc., 752 F. Supp. 1240, 1245 (D.N.J. 1990); see also English v. General Electric Co., 496 U.S. 72, 87 (1990) ("Ordinarily, the mere existence of a federal regulatory or enforcement scheme . . . does not by itself imply pre-emption of state remedies."). In the Sandom case, the court allowed a CEPA cause of action to be pled concurrently with a Title VII retaliation cause of action because, in the event of a successful showing of retaliation, CEPA would provide greater relief for the claimant than would Title VII. 752 F. Supp. at 1245. Further, the court reasoned that "CEPA is in accord with the goals and provisions of, and consequently is not preempted by, Title VII." Id. at 1246.

The court's reasoning in Sandom extends to the question of Count X in this case, as the FLSA retaliation claim also will not preempt a CEPA claim where CEPA would provide greater relief for the claimant than would the FLSA. Remedies under the FLSA, where an employee alleges retaliation, include "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (2006). The damages available under CEPA are broader, including a provision directing that "[a]ll remedies available in common law tort actions shall be available to prevailing plaintiffs ... in addition to any legal or equitable relief provided by this act or any other statute," including "[p]unitive damages." N.J.S.A. 34:19-5; Green v. Jersey City Bd. of Educ., 177 N.J. 434, 442 (2003). Because in the event of a successful showing of retaliatory discharge CEPA would provide greater relief for Plaintiff Kronick than would the

11

FLSA, Defendant's motion to dismiss Count X will be denied.

### E. Count XI

The Court will first consider Defendant's motion to dismiss Count XI based on the allegation that Plaintiffs have purported to bring a private right of action for retaliation under the administrative provisions of the New Jersey Wage and Hour Law ("NJWHL")[4] when such a private right of action is not available under the statute. In response, Plaintiffs again point to the Mulford case, upon which this Court has herein based its finding that there is an implied private right of action in the NJWPL. Defendant, as above, cites the enforcement provisions of the NJWHL providing that the Commissioner of Labor has enforcement authority over violations of the statute, in arguing that this Court should not read the statute to allow a private right of action for retaliation.

The analysis this Court undertook to assess whether there is an implied private right of action in the NJWPL is applicable here as well. In Mulford, the court found employees to be the "special beneficiaries" of the NJWPL, and thus found that the statute impliedly conferred a private right of action "to protect and enforce their rights thereunder, as a remedy in addition to the penal and administrative sanctions and administrative wage collection proceedings, provided by other sections thereof." 354 N.J. Super. at 394. This Court provides the Plaintiffs in this case with the benefit of the same inference above, that a private right of action for retaliation is implied in the NJWHL because employees, as special beneficiaries of the NJWHL, have a right to protect and enforce their rights under that statute as a remedy beyond that provided by the

---

[4] For the purposes of this discussion, the Court will refer to these claims as claims under the NJWHL, although the Court recognizes that Plaintiffs' Complaint refers to the administrative provisions enacted to enforce the statute.

administrative process.  Further, Defendant has not presented a case that suggests that there has ever been a finding that an implied private right of action for retaliation has not been found in the NJWHL or its associate administrative provisions.

In Sternadori v. SCS Healthcare Marketing, Inc., in which the court recognized the private right of action found by the New Jersey court in Mulford, the court noted that the NJWPL does not provide for statutory or punitive damages for a prevailing civil litigant.  Sternadori at * 5-*6.  The court explained that even if the plaintiff in that case prevailed on her claim, her only available remedy would be the wages she was due.  Id. at *6.  Here too, because this Court finds an implied private right of action for retaliation in the NJWHL, there are no statutory or punitive damages available under the statute if Plaintiffs do indeed prevail on their claim.  The only available remedy to Plaintiff Kronick would be wages due.

The Court thus turns to Defendant's argument that Plaintiff's NJWHL claim is preempted by their FLSA claim.  As explained above, "the existence of a federal cause of action does not . . . . foreclose the possibility of concurrent and complementary state law."  Sandom, 752 F. Supp. at 1245; English, 496 U.S. at 87 ("Ordinarily, the mere existence of a federal regulatory or enforcement scheme . . . does not by itself imply pre-emption of state remedies.").  The court's reasoning in Sandom was that a CEPA cause of action and a Title VII cause of action could be pleaded concurrently because, in the event of a successful showing of retaliation, CEPA would provide greater relief for the claimant than would Title VII.  752 F. Supp. at 1245.  This Court extended the logic of Sandom to the question of Count X in this case, denying Defendant's motion to dismiss Count X, as Plaintiffs' FLSA retaliation claim does not preempt a CEPA claim where CEPA would provide greater relief for Plaintiffs if they prevailed than would the FLSA.

13

Because Plaintiffs, if they prevailed on a retaliation claim under the NJWHL, would only be entitled to wages due to Plaintiff Kronick and not statutory or punitive damages, FLSA preempts their NJWHL retaliation claim. Remedies under the FLSA, where an employee alleges retaliation, include "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (2006). The damages available under FLSA are thus far broader than the remedy available under the NJWHL.

This Court finds a private right of action for retaliation implied in the NJWHL. Although the Court finds an implied private right of action for retaliation in the NJWHL, Defendant's motion to dismiss based on FLSA preemption will be granted, as Plaintiffs' remedies under the NJWHL would not be greater than those available in the case of a successful FLSA claim.[5]

### F.     Count XII

Defendant moves to dismiss Plaintiffs' claim in Count XII of the Complaint, alleging that Plaintiffs' claim of wrongful termination in violation of public policy is preempted by the FLSA, or CEPA. Alternatively, Defendant argues that Plaintiffs' wrongful termination claim should be dismissed because Plaintiffs did not properly plead the required elements of the claim. The Court will grant the motion to dismiss, as Plaintiffs' claim in Count XII is preempted by their FLSA retaliation claim.

Similar to the analysis in II.B. supra, a FLSA retaliatory discharge claim will prevent a

---

[5]Because the Court has determined that the claim in Count XI is preempted by the FLSA, the Court finds it unnecessary to address Defendant's argument that Count XI is preempted by CEPA.

plaintiff from seeking tort remedies for wrongful discharge in violation of public policy.[6] Ruccolo v. BDP, Intl., Inc., No. 95-2300 (JBS), 1996 WL 735575, *3 (D.N.J. March 25, 1996) ("A plaintiff cannot bring a public policy violation claim if the statute embodying the public policy that allegedly has been violated provides a remedy itself."). The facts and circumstances of Plaintiff's alleged wrongful discharge are based on Plaintiffs' FLSA claim. Thus, the FLSA preempts Count XII. Accordingly, Count XII will be dismissed on preemption grounds.[7]

## II.     CONCLUSION

Based on the foregoing reasoning, this Court will grant Defendant's motion to dismiss Counts V, VI, VII, VIII, IX, XI, and XII and deny Defendant's motion to dismiss Counts IV and X. The accompanying Order shall issue today.


Dated:     9-29-08                               /s/ Robert B. Kugler

                                                 ROBERT B. KUGLER

                                                 United States District Judge

---

[6] Plaintiffs do not specifically allege in Count XII of their Complaint what policy was violated. Plaintiffs re-allege and incorporate the foregoing paragraphs of their Complaint, so the Court infers, based on the specific allegations of the Complaint, that Plaintiff Kronick alleges that she was wrongfully terminated in violation of a public policy against retaliatory discharge.

[7] Because the Court has determined that the claim in Count XII is preempted by the FLSA, the Court finds it unnecessary to address Defendant's arguments that Count XII is preempted by CEPA or that Plaintiffs did not properly plead the required elements of the wrongful discharge claim.